IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RPG INVESTMENT HOLDINGS, LLC,<br>a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GREETINGS CORP.,<br>an Ohio Corporation,<br><br>Defendant. | )<br>)<br>)<br>)   08-cv-4422<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY THE
GROUP OF SECOND LIEN LENDERS OF RPG HOLDINGS, INC. AND
<u>RECYCLED PAPER GREETINGS, INC.</u>**

The group of certain unaffiliated lenders (the "Second Lien Group")[1] under the Second Lien Credit Agreement (as defined herein), through its undersigned counsel, hereby seeks permission to intervene in this action pursuant to Fed. R. Civ. P. 24(a)(2) and/or (b) for the purpose of responding to the portions of plaintiff RPG Investment Holdings, LLC's ("RPGI") complaint and motion for a temporary restraining order seeking to enjoin defendant American Greetings Corp. ("AG") from (i) contacting the lenders of non parties Recycled Paper Greetings, Inc. ("RPG") or RPG Holdings, Inc. ("RPG Holdings," and, collectively with RPG, the "Companies"), or (ii) exercising rights under the First and Second Lien Credit Agreements (as defined herein).[2]

---

[1] The institutions composing the Second Lien Group are funds managed by AEA Investors LLC, Guggenheim Investment Management, LLC, Plainfield Asset Management LLC, and Camulos Capital LP.

[2] The Second Lien Group expressly reserves its right to file a motion to intervene in this action at a later date with respect to the portions of plaintiff's complaint not addressed herein.

## PRELIMINARY STATEMENT

The plaintiff in this litigation, RPGI, is the beneficial equity holder of non party RPG, the operating company in which the members of the Second Lien Group hold over 97% of the second lien debt. RPGI seeks to enjoin defendant AG, which holds a majority of first-lien debt in RPG, from having any communications whatsoever with the Second Lien Group or its members. The practical effect of such relief, if granted, would be to prevent the Second Lien Group, its members, RPG, and AG from engaging in meaningful negotiations critical to restructuring RPG's balance sheet and ensuring its survival. RPGI seeks this relief notwithstanding its own acknowledgement that failure "to restructure the existing Credit Agreements will cause irreparable harm," and will call into question "RPG's ability to continue to operate independently in the marketplace." Compl. ¶ 57. RPGI seeks this relief to enhance its own negotiating leverage, in a situation where, as a mere equity holder, it otherwise has little leverage.

While AG opposes RPGI's attempts to thwart negotiations among RPG's lenders critical to RPG's survival, its participation in the litigation does not adequately protect the Second Lien Group's interests vis-à-vis its second lien debt position in RPG. As a first lien lender, *and* a direct competitor of RPG, AG has available to it an array of strategic alternatives not necessarily limited to negotiations with the Second Lien Group and RPG, and its interests may not be aligned with those of the Second Lien Group.

If RPGI succeeds in stalling, even for a short period of time, the creditors' restructuring negotiations, RPG will experience a worsening competitive disadvantage in the marketplace. Thus, both the Second Lien Group, as well as RPG, who is not a party to this action, will have

been irreparably harmed. Only through intervening as a party in this proceeding can the Second Lien Group adequately protect its own interests.

## RELEVANT FACTUAL BACKGROUND

Plaintiff RPGI is the sole shareholder of RPG Holdings which, in turn, is the sole shareholder of RPG. Upon information and belief, RPGI is controlled by its majority shareholders Monitor Clipper Equity Partners II, L.P. and Monitor Clipper Equity Partners (NQP) II, L.P. (collectively "Monitor Clipper") which, for all intents and purposes, exercise operating control over RPG.

Defendant AG purportedly controls over 50% of the debt issued under the First Lien Credit Agreement dated as of December 5, 2005 among RPG Holdings, RPG, the First Lien Lenders, and Credit Suisse, Cayman Islands Branch, as administrative agent and as collateral agent (the "First Lien Credit Agreement"). The First Lien Credit Agreement is secured by a first priority lien on substantially all of the assets of RPG, RPG Holdings, and RPG's subsidiaries. AG is also the second largest greeting card company in the United States, and is a direct competitor of RPG, the third largest greeting card company in the United States, albeit considerably smaller than numbers one and two in the industry.

The Second Lien Group is comprised of certain unaffiliated lenders under the Second Lien Credit Agreement, dated as of December 5, 2005, among RPG Holdings, RPG, the Second Lien Lenders, and Credit Suisse, Cayman Islands Branch, as administrative agent and as collateral agent[3] (the "Second Lien Credit Agreement"). The Second Lien Credit Agreement is secured by a second priority lien on the same assets securing the First Lien Credit Agreement.

---

[3] Pursuant to a Successor Agent Agreement dated June 2, 2008, Wells Fargo Bank, National Association succeeded Credit Suisse as the administrative and collateral agent under the Second Lien Credit Agreement.

Members of the Second Lien Group control more than 97% of debt issued under the Second Lien Credit Agreement.

RPG and RPG Holdings are currently in default under both the First and Second Lien Credit Agreements. Upon information and belief, beginning in or about March 2008, RPG acknowledged that it was hampered by an over-leveraged capital structure. In an effort to solve these problems and infuse into RPG the cash necessary for it to be financially stable, RPG and certain of its principal stakeholders attempted to engage in negotiations, resulting in six separate restructuring proposals made during April, June and July 2008: (i) a proposal of RPG, dated April 24, 2008; (ii) a proposal of the Second Lien Group, dated June 19, 2008; (iii) a proposal of RPG and RPG Holdings (which was supported by RPGI), dated July 15, 2008; (iv) a proposal of AG, dated July 25, 2008; (v) a proposal of Credit Suisse, in its capacity as agent under the First Lien Credit Agreement, dated July 29, 2008; and (vi) a proposal by the Second Lien Group, dated August 2, 2008. Each of these proposals (including the proposal made by RPG and RPG Holdings and supported by RPGI) assumed that the Companies' Second-Lien Debt was the fulcrum debt obligation in the Companies' capital structure, and attributed no economic value to RPGI's indirect equity interest in RPG. Unfortunately, because of the specter of litigation, and now this pending litigation, the numerous foregoing proposals have been like ships passing in the night; a term sheet does not do much good when the parties whose interests are intended to be affected are unable to discuss the terms on the sheet.

On August 6, 2008, RPGI filed its complaint in this action, asserting claims against AG for breach of contract and tortious interference of contractual and beneficial relations, and demanding specific performance of contractual obligations. RPGI alleges in the complaint that AG has breached a confidentiality agreement it entered into with RPGI in May 2008 by, among

other things, contacting RPG's lenders for the purpose of acquiring over 50% of RPG's First Lien Debt. In connection with the complaint, RPGI seeks, by way of emergency motion (the "TRO Motion"), a temporary restraining order enjoining AG from contacting any of RPG's lenders, or exercising any rights or remedies afforded by the First and Second Lien Credit Agreements.

Following a hearing on the TRO Motion held on August 7, 2008, AG agreed that it would not communicate with holders of the Second Lien Debt, including the Second Lien Group, through and including August 19, 2008. Accordingly, the possibility of a potential out-of-court restructuring of RPG's balance sheet has continued to be significantly frustrated.

The problems of over-leverage recognized by RPG and its advisors in March has become more acute with the passage of time. Accordingly, the delay in meaningful discussions between RPG's two largest creditor groups resulting from RPGI's tactical litigation strategy is causing irreparable harm to the second lien lenders of RPG.

## ARGUMENT

I. THE SECOND LIEN GROUP SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION

### A. The Second Lien Group Is Entitled To Intervene As Of Right

Federal Rule of Civil Procedure 24(a)(2) states that "upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

*See Nat'l Cas. Co. v. Davis*, No. 91 C 01318, 1991 U.S. Dist. Lexis 7651, at *1 (N. Dist. Ill. June 3, 1991)[4]; *Jessup v. Luther*, 227 F.3d 993, 996 (7th Cir. 2000).

The Second Lien Group meets these requirements: its members have direct and substantial economic and property interests in the pending action, and its interests are not adequately protected by either RPGI or AG. The members of the Second Lien Group, who hold, in the aggregate, over 97% of the total outstanding second lien loans (approximately $84 million), have a direct economic stake in the survival of RPG. Additionally, by virtue of the second priority lien on substantially all of the Companies' assets granted under the Second Lien Credit Agreement, the members of the Second Lien Group have a direct property interest in the collateral securing the RPG debt purportedly acquired by AG. Thus, the members of the Second Lien Group have a vested interest in maximizing the value of RPG for the benefit of all of its stakeholders. This can best be achieved by a quick and successful restructuring of RPG's debt obligations, which in turn requires the participation in negotiations of AG. Because AG purportedly holds more than 50% of RPG's senior debt, any consensual restructuring cannot realistically be attained without AG's participation. Indeed, given that the temporary restraining order RPGI seeks would prevent AG from engaging in restructuring discussions with the Second Lien Group, if granted, it would operate as a temporary restraining order on the Second Lien Group as well. Under such circumstances, parties have been granted the right to intervene even in cases where they did not seek to do so until the appeal stage. *See, e.g., U.S. v. Holy Land Foundation*, 445 F.3d 771, 779-80 (5th Cir. 2006).

Moreover, both AG and RPGI may not necessarily share the objective of maximizing the value of RPGI, and may instead be motivated by a desire to protect their own, pecuniary

---

[4] For the Court's convenience, a copy of *Nat'l Cas. Co. v. Davis*, No. 91 C 01318, 1991 U.S. Dist. Lexis 7651, at *1 (N. Dist. Ill. June 3, 1991) is attached hereto as Exhibit 1.

interests. Such pecuniary interests by virtue of being in entirely different parts of the capital structure of a financially troubled company are, by definition, materially different from those of the second lien lenders. RPGI, itself controlled by a private equity fund (Monitor Clipper), only has an economic interest in salvaging whatever value may remain in its equity holding, if any, or, if there is no value for such equity, in pursuing a damages action against a deep pocket – AG – under its theories of breach of contract and tortious interference. The fact that RPGI seeks to prevent, by virtue of the TRO Motion, an open dialogue among RPG's principal stakeholders, and thereby risks RPG's survival as its remaining liquidity dwindles, itself establishes that RPGI's interests could not be more divergent from those represented by the Second Lien Group. Indeed, given that the imposition of a temporary restraining order may imperil RPG's ability to compete effectively in the marketplace, it is troubling that RPG is not seeking intervention in these proceedings to oppose the relief being sought by its own ultimate equity owner. However, silence on these issues may be the best the directors of RPG feel they can do, in view of their duty to the second lien lenders, on the one hand, and their allegiance (indeed, identity) with the equity holders of RPGI, on the other hand.

Although the Second Lien Group joins AG in opposing RPGI's TRO Motion, it too fails to adequately represent the Second Lien Group's interests. AG wears multiple hats in this restructuring. AG is (presently) a first lien lender, and as such has an array of strategic options available to it other than to negotiate an out-of-court restructuring with the Second Lien Group and RPG. For example, AG could simply sell some or all of its debt to another lender, or, depending upon the outcome of RPGI's TRO Motion, seek to foreclose on the assets collateralizing its debt, without regard to whether such potential actions would maximize value for the Second Lien Group. Moreover, as one of RPG's largest direct competitors, AG may also

7

be motivated to gain a competitive advantage over RPG in the marketplace. Thus, though AG and the Second Lien Group both oppose the TRO Motion, AG has no economic stake in or other motivation to protect the interests of the members of the Second Lien Group.

Accordingly, because the TRO Motion, if granted, will materially and negatively impact the members of the Second Lien Group, and because neither RPGI nor AG will protect the interests of the members of the Second Lien Group, the Second Lien Group must be permitted to intervene to properly protect its members' own interests, which are directly affected by the relief requested.

### B. Alternatively, The Second Lien Group Should Be Granted Permissive Intervention Under Rule 24(b)

Alternatively, the Second Lien Group should be authorized to intervene permissively under Fed. R. Civ. Pr. 24(b). As relevant here, Rule 24(b) permits intervention upon timely application "when an applicant's claim or defense in the main action have a question of law or fact in common." *See Jessup*, 227 F.3d at 996. In determining whether permissive intervention should be granted, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* (quoting Fed. R. Civ. P. 24(b)). These factors must also be resolved in favor of intervention.

Common issues of law and fact dominate RPGI's assertion that a temporary restraining order precluding AG from communicating with the Second Lien Group should be issued, and the Second Lien Group's assertion that no such relief is warranted. These include whether the confidentiality agreement allegedly entered into by RPGI and AG can prevent AG from contacting RPG's lenders, whether injunctive relief is appropriate in this case, and whether AG is entitled to the benefit of a valid first lien interest in RPG.

Critically, the Second Lien Group's intervention will neither delay nor prejudice the rights of RPGI or AG. Indeed, given that the Second Lien Group seeks to intervene at the very outset of the litigation, its participation should not delay the litigation at all or prejudice the parties in any way. This is especially true given that the Second Lien Group moves to intervene only for the narrow purpose of opposing the portions of RPGI's complaint and TRO Motion that seek to enjoin AG from contacting the Companies' lenders (including the Second Lien Group) or exercising rights under the First and Second Lien Credit Agreements.

### C. **Intervention Is Timely**

Both with respect to intervention as of right and permissive intervention, the Court must consider whether the motion for intervention was timely. Fed. R. Civ. P. 24 (a) and (b). There can be no question here that the Second Lien Group's motion for intervention is timely. The Second Lien Group appeared at the hearing on RPGI's TRO Motion held by this Court on August 7, 2008, and files its motion for intervention seven days after RPGI's complaint was filed, and on the same day that AG's opposition to RPGI's TRO Motion is due.

### D. **The Second Lien Group Has Complied With Fed. R. of Civ. P. 24(c)**

The Second Lien Group files its Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order concurrently herewith in satisfaction of Fed. R. Civ. P. 24(c)'s requirement that a motion to intervene be accompanied by a responsive pleading setting out the claim or defense for which intervention is sought. *See Davis*, No. 91 C 01318, 1991 U.S. Dist. Lexis 7651, *1 (holding that the filing of motions to dismiss and for summary judgment "fulfills the requirement of Rule 24(c)").

## **CONCLUSION**

For the foregoing reasons, the Second Lien Group respectfully requests that the Court allow it to intervene in this action, either permissively or as of right.

Dated: New York, New York
        August 13, 2008

Respectfully submitted,

*Of Counsel*

/s/ *Janice A. Alwin*

Fred S. Hodara
Abid Qureshi
Akin Gump Strauss Hauer& Feld LLP.
590 Madison Avenue
New York, New York  10022
(212) 872-8040 (Telephone)
(212) 872-1002 (Telecopier)
fhodara@akingump.com

Steven B. Towbin (2848546)
Janice A. Alwin (6277043)
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 276-1333  direct phone
(312) 275-0569  direct facsimile
stowbin@shawgussis.com

281414v1

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that service of the above and foregoing memorandum was accomplished (i) by electronic notice to CM/ECF registrants and (ii) by First Class U.S. Mail, postage prepaid on this 13th day of August, 2008.

*/s/ Janice A. Alwin*

### CM/ECF Service List:

- **Michael F. Braun**
  mbraun@srzlaw.com

- **James L. Komie**
  jkomie@srzlaw.com

- **Mark P. Rotatori**
  mprotatori@jonesday.com,babutkus@jonesday.com

- **Lee Ann Russo**
  larusso@jonesday.com

- **Robert D Snow , Jr**
  rsnow@srzlaw.com

### Mail Service List:

**Michael F. Braun**
Schuyler, Roche & Zwirner
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**Robert D Snow, Jr**
Schuyler Roche and Zwirner
One Prudential Plaza
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**Mark P. Rotatori**
Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692

**James L. Komie**
Schuyler, Roche & Zwirner
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**Lee Ann Russo**
Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692

**With Courtesy Copies to:**

**Hon. Ruben Castillo**
**Chambers 2146**
**219 S Dearborn St**
**Chicago, IL 60604**

LEXSEE 1991 U.S.DIST. LEXIS 7651

NATIONAL CASUALTY CO., Plaintiff, v. JOHN DAVIS, d/b/a D & W WRECK-
ING CO., Defendant, and JOAN HARDING and THE NORTHERN TRUST CO., as
Co-Special Administrators of the Estate of ROOSEVELT WILLIAMS, Deceased,
and JOAN HARDING, Individually, Applicants for Intervention

Case No. 91 C 01318

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*1991 U.S. Dist. LEXIS 7651*

June 3, 1991

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Intervening defendants, special administrators of the estate of the deceased employee, filed a motion to intervene, pursuant to *Fed. R. Civ. P. 24(c)*, and plaintiff liability insurer filed a motion to strike the motion to intervene, in the action by the insurer for a declaratory judgment against defendant insured employer to establish lack of liability for the accident.

**OVERVIEW:** The employee died in an accident while working for the employer. The liability insurer undertook the employer's defense and even offered a settlement. Later, the insurer stated that it was not liable and began a declaratory judgment action against the employer to establish its nonliability under the policy. The special administrators of the employee's estate filed a motion to intervene pursuant to *Fed. R. Civ. P. 24(c)*. The insurer filed a motion to strike the intervention and to strike other scandalous matters. The trial court entered judgment in favor of the intervenors and overruled the insurer's motions. The trial court determined that *Rule 24(a)(2)* required an intervenor prove a substantial interest, a potential impairment of the interest, and the lack of adequate representation. The administrators established all three, especially in light of the impression created by the insurer that it was responsible. Finally, *Fed. R. Civ. P. 12(f)* only permitted a motion to strike scandalous matters in a pleading, which a motion to intervene was not.

**OUTCOME:** The trial court granted the motion of the intervening administrators of the employee's estate and denied the liability insurer's motion to strike.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Intervention > Motions to Intervene*
[HN1] A motion for intervention must be accompanied by a pleading setting forth the claim or defense for which intervention is sought, pursuant to *Fed. R. Civ. P. 24(c)*.

*Civil Procedure > Parties > Intervention > Right to Intervene*
*Civil Procedure > Parties > Intervention > Timeliness*
[HN2] *Fed. R. Civ. P. 24(a)(2)* sets out three requirements for intervention as of right, upon timely application: (1) an interest relating to the subject of the action; (2) potential impairment, as a practical matter, of that interest by the disposition of the action; and (3) lack of adequate representation of the interest by the existing parties.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Civil Procedure > Pleading & Practice > Motion Practice > Supporting Memoranda*
*Civil Procedure > Parties > Intervention > Motions to Intervene*
[HN3] *Fed. R. Civ. P. 12(f)* provides for motions to strike pleadings containing immaterial, impertinent, or scandalous matter. A motion to intervene and the memorandum in support of that motion are not pleadings.

**JUDGES:** [*1] Marvin E. Aspen, United States District Judge.

**OPINION BY:** ASPEN

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Joan Harding and the Northern Trust Co., co-special administrators of the estate of Roosevelt Williams, and Joan Harding, individually, (collectively, "Harding") have moved to intervene as defendants in the present action. Plaintiff National Casualty Co. ("National") has moved to strike the motion to intervene, or, alternatively, to strike from the motion certain scandalous matters. For the reasons set forth below, we grant the motion to intervene, and deny the motion to strike.

Roosevelt Williams worked as a brick stacker for John Davis, d/b/a D & W Wrecking Co. ("Davis"), a demolition business. On July 23, 1987, Williams was killed at a demolition site in Chicago, Illinois. On August 5, 1987, Harding filed a wrongful death action in state court against Davis. Shortly thereafter, National, Davis' liability insurer, undertook Davis' defense. At least one settlement offer was made by National sometime after April 30, 1990, but was not approved by the state court. Since Williams' death, the statute of limitations on any possible workmen's compensation claim has run. At present, the state wrongful death [*2] suit is still pending.

On February 27, 1991, National advised Davis for the first time that it had reason to believe the claim arising out of Williams' death was not, in fact, covered by Davis' insurance, and that National was reserving its rights under the policy. On March 4, 1991, National filed this action for declaratory judgment against Davis, seeking a declaration that the insurance policy does not cover the claim brought by Harding in the state court action.

As a preliminary matter, we observe that the intervenor's filing of two motions to dismiss and a motion for summary judgment soon after filing its motion to intervene fulfills the requirement of *Rule 24(c)* that [HN1] a motion for intervention "be accompanied by a pleading setting forth the claim or defense for which intervention is sought." *Fed. R. Civ. P. 24(c)*. Where the necessary pleading is filed soon after the motion, and there is no prejudice to the other parties, a strictly textual interpretation of the rule is unwarranted. *Shevlin v. Schewe, 809 F.2d 447, 450 (7th Cir. 1987)*.

*Rule 24(a)(2) of the Federal Rules of Civil Procedure* [HN2] sets out three requirements for intervention as of right, upon timely [*3] application: (1) an interest relating to the subject of the action; (2) potential impairment, as a practical matter, of that interest by the disposition of the action; and (3) lack of adequate representation of the interest by the existing parties. *See Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 203 (7th Cir. 1982)*.

While acknowledging that the term "interest" should be "broadly construed," the Seventh Circuit does require that the interest asserted be "direct and substantial," *id. at 204*, rather than merely conjectural. In this case, National seeks a declaration that the insurance policy it issued to Davis does not cover the very claim brought by Harding in state court. As in *Hartford Accident & lndem. Co. v. Crider, 58 F.R.D. 15, 18 (N.D. Ill. 1973)*, Harding has a "vital interest" in the subject of this action. Moreover, the particular circumstances surrounding this action serve to heighten Harding's interest in whether her claim will be covered by National: (1) National has already made at least one settlement offer during pretrial proceedings in state court, thus creating a kind of expectation of coverage [*4] on the part of the intervenors; and (2) the statute of limitations has run on any possible workmen's compensation claim, which might have been an alternative source of indemnification.

The second requirement of *Rule 24(a)(2)* is likewise satisfied, since the outcome of the present action may, as a practical matter, impair Harding's interest. If National obtains a declaration that the insurance policy does not cover Harding's state court claim, practical impairment in the recovery of any judgment Harding may obtain is the likely result. Indeed, National's purpose in bringing the present action is to ensure that the insurance policy will not be a source of funds from which Harding's claim may be satisfied. *See Crider, 58 F.R.D. at 18*; *see also Meridian Homes, 683 F.2d at 204*; *New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549, 552-53 (D.R.I. 1986)*.

The third requirement, that intervenors' interest not be adequately represented by the existing parties, is also satisfied. The interests of Davis and Harding in this action are sufficiently different to raise the very real possibility that Davis would not be as vigorous as Harding [*5] in defending the action. Simply put, Davis' interest in Harding being paid is not as strong as Harding's interest in Harding being paid. Harding should be allowed to be heard in her capacity as estate special administrator. *See Greaves, 110 F.R.D. at 552, 553*; *see also* 7C C. Wright & A. Miller, *Federal Practice and Procedure* § 1909, at 346 (1986).

Concerning National's motion to strike the motion to intervene or, alternatively, to strike certain paragraphs of the memorandum supporting the motion to intervene, *Fed. R. Civ. P. 12(f)* [HN3] provides for motions to strike *pleadings* containing "immaterial, impertinent, or scandalous matter."[1] A motion to intervene and the memorandum in support of that motion are not plead-

1991 U.S. Dist. LEXIS 7651, *

ings. *See Board of Educ. v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 303-04 (N.D. Ill. 1982); *O'Connor v. Nevada*, 507 F. Supp. 546, 547-48 (D. Nev. 1981), *aff'd*, 682 F.2d 749 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S. Ct. 491, 74 L. Ed.2d 633 (1982); *Fed. R. Civ. P. 7*; *see also* 5A C. Wright & A. Miller, *Federal Practice* [*6] *and Procedure* § 1380, at 645-46 n.6 (1990). National's motion to strike must accordingly be denied.

   1   National wrongly cites *Fed. R. Civ. P. 12(e)*, which describes a motion for more definite statement.

*Conclusion*

We grant Harding's motion to intervene and deny National's motion to strike. Harding's motion to dismiss based on *Fed. R. Civ. P. 19* is thus moot. Briefing schedules for Harding's *Rule 12(b)(6)* motion to dismiss and motion for summary judgment are as follows: National's joint response shall be filed on or before June 17, 1991, and Harding's joint reply on or before June 26, 1991. The status hearing set for June 7, 1991 is stricken and reset for July 26, 1991, at 10:00 a.m. It is so ordered.