**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RPG INVESTMENT HOLDINGS, LLC, a Delaware Limited Liability Company, RPG HOLDINGS, INC., a Delaware Corporation and RECYCLED PAPER GREETINGS, INC., an Illinois Corporation | ) ) ) ) ) ) | Case No. 08 CV 4422 Judge Wayne R. Andersen Magistrate Judge Maria Valdez |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| AMERICAN GREETINGS CORP., An Ohio Corporation, | ) ) ) | |
| Defendant. | ) | |

**RESPONSE OF THE INFORMAL GROUP OF SECOND LIEN LENDERS TO**
**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF EMERGENCY MOTION**
**FOR TEMPORARY RESTRAINING ORDER**

The Second Lien Group[1] hereby files this response to the Reply Memorandum (the "Reply") in Support of Emergency Motion for Temporary Restraining Order (the "TRO Motion") of plaintiffs RPG Investment Holdings, LLC ("RPGI"), RPG Holdings, Inc. ("RPG Holdings") and Recycled Paper Greetings, Inc. ("RPG" and together with RPGI and RPG Holdings, the "Companies").

**PRELIMINARY STATEMENT**

The single most important prerequisite for the issuance of a temporary restraining order ("TRO") is a demonstration that, if it is not granted, the movant is likely to suffer "irreparable harm" before a decision on the merits of its complaint can be rendered. Recognizing that its

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Second Lien Group's Memorandum of Law in Opposition to Plaintiff RPGI's Emergency Motion for a Temporary Restraining Order [Docket No. 20].

initial complaint and TRO Motion was fatally flawed in that it only alleged irreparable harm to non-Parties RPG and RPG Holdings, RPGI attempted to correct this by amending its complaint to add those entities as plaintiffs (the "Amended Complaint"), and submitting an additional affidavit (the "Yoon Affidavit") further elaborating on the alleged harms.  This second attempt of RPGI to meet its burden must also fail because RPGI still cannot establish any relationship between the principal alleged harm – the Companies' inability to restructure their debt – and the presence of American Greetings Corp. ("AG") as a holder of first lien debt.   To the contrary, and as set forth in the affidavit of Edward H. Burdick (the "Burdick Aff."),[2] a partner of one of the members of the Second Lien Group, the failure to achieve an out-of-court restructuring of the Companies' debt has nothing to do with AG's conduct.  If anything, the cause for the failure of negotiations between the Companies and its lenders lies principally with RPGI itself.  Burdick Aff., ¶ ¶ 8-11.

The Yoon Affidavit disingenuously characterizes the true progress of the restructuring discussions that were ongoing prior to AG's acquisition of first lien debt, and the cause for the failure to achieve a consensual out-of-court restructuring of the Companies' debt obligations. Contrary to plaintiffs' assertion, there was no "deal" that would have been timely reached but for AG's acquisition of first lien debt.  Rather, before it was discovered that AG held a significant position in the first lien debt, restructuring discussions between the Second Lien Group and the Companies were in their initial stages.  None of the restructuring proposals exchanged between the Companies and the Second Lien Group resulted in the parties being even close to achieving a consensual, out-of-court restructuring.  Burdick Aff., ¶ ¶ 4-8.

---

[2] A copy of the Affidavit of Edward H. Burdick is attached as Exhibit A.

As plaintiffs have acknowledged, the Companies are facing a severe liquidity crisis in the near term that, if not addressed, could precipitate a freefall into bankruptcy. Reply at p. 12; Yoon Aff., ¶ 7. Any order enjoining the Companies' majority holder of senior secured debt from engaging in productive restructuring discussions with the Second Lien Group, would exacerbate an already daunting challenge to avoid chapter 11 and a potential liquidation of the business.

Thus, not only does the addition of the Amended Complaint and the Yoon Affidavit continue to fall woefully short of demonstrating the necessary "irreparable harm", which is in fact self-inflicted, but the balance of the harms continues to weigh decisively against the granting of an injunction.

## ARGUMENT

### Plaintiffs Have Failed To Demonstrate 'Irreparable Harm' From AG's Alleged Conduct And The Balance of Harms Weighs Against Granting an Injunction

Plaintiffs rely on the Yoon Affidavit to bolster their argument that they will suffer irreparable harm absent an order enjoining AG from communicating with the Companies' second lien lenders. Specifically, plaintiffs argue that AG's presence as a first lien lender has, and will continue to, impede efforts to timely consummate a consensual out-of-court restructuring of the Companies' debt obligations. Yoon Aff., ¶ 6 ("At the time that AG acquired debt from the First Lien Lenders, RPGI and its affiliates were engaged in ongoing discussions with the First and Second Lien Lenders and had expected to be able to restructure the debt…"); Reply at p. 10 ("[t]he unwelcomed presence of AG in these efforts threw a monkey wrench in the renegotiations by…scaring away potential new investors…and…causing the current Second Lien Lenders to balk at completing a restructuring of their debt without the participation of AG…"). The Yoon Affidavit, however, overstates the actual progress that was made in restructuring discussions before the Second Lien Group discovered that AG acquired first lien

3

debt, and wrongly places blame on AG for the Companies' failure to achieve a consensual out-of-court restructuring. Burdick Aff., ¶ 3.

In or around April 2008, the Companies approached their lenders to discuss an out-of-court restructuring of their debt obligations under the First and Second Lien Credit Agreements. The premise of those discussions was RPG's business plan and financial forecasts. The Second Lien Group actively participated in the review of RPG's business plan over the course of April through June, prior to the Second Lien Group's knowledge that AG had acquired a significant portion of the first lien debt. In approximately early July 2008, RPG revealed to its lenders that the financial forecasts contained in the April 2008 business plan were no longer accurate and needed to be substantially revised. When RPG subsequently presented its revised business plan to its lenders in July 2008, its financial forecasts were materially lower than the April 2008 forecasts that had been the basis of negotiations. It was only after this July 2008 meeting that the Second Lien Group determined that AG held a position in the first lien debt. None of the restructuring proposals exchanged between the Companies and the Second Lien Group during this timeframe, however, resulted in the parties being even close to achieving a consensual, out-of-court restructuring. To the contrary, from the Second Lien Group's perspective, the parties remained far apart. Thus, the failure of these negotiations was unrelated to AG's acquisition of first lien debt. Burdick Aff., ¶¶ 4-9.[3]

If any party has taken steps that may irreparably harm the Companies' ability to consensually restructure their debt, that party is RPGI. By virtue of first the threat, and now the pursuit, of this litigation, critical negotiations between the Companies and their lenders have

---

[3] Plaintiffs' allegation that AG's presence "scar[ed] away potential new [equity] investors", Reply at p. 10, rings hollow. The Second Lien Group itself has not ruled out such an investment, if necessary, under the appropriate circumstances. Burdick Aff., ¶ 10.

been hampered.     Burdick Aff.,¶ 11.     Perhaps recognizing that its equity interests in the Companies may be worthless, RPGI has decided to press forward with this litigation in an apparent attempt to extract undeserved value at the expense of the Companies' creditors.

While there is no question that the Companies' current financial crisis may harm RPGI's end-game to retain a controlling interest in the Companies and to extract some value for its arguably worthless equity interest, any such "harm" has nothing whatsoever to do with the fact that AG is a holder of first lien debt.  Nor can blame for the Companies' failure to reach an out-of-court restructuring of its balance sheet fall to AG.  As the Burdick Affidavit demonstrates, that failure lies first and foremost, if not exclusively, with RPGI itself.  RPGI's pursuit of a TRO that would, if issued, put a practical stop to restructuring negotiations, will result in real and immediate harm to RPG's business, its hundreds of employees, and the Companies' lenders.

## CONCLUSION

The alleged conduct that plaintiffs seek to enjoin is not even indirectly the cause of the purported "irreparable harm" -- the real harm that the issuance of a TRO will cause will befall third parties, including the Second Lien Group.  Thus, plaintiffs fail to meet their burden and the TRO Motion must be denied.

Dated: New York, New York
          September 4, 2008

                                                            Respectfully submitted,

*Of Counsel*

                                                   _____/s/ Janice A. Alwin_____


Fred S. Hodara                                Steven B. Towbin (2848546)
Abid Qureshi                                  Janice A. Alwin (6277043)
Akin Gump Strauss Hauer& Feld LLP            Shaw Gussis Fishman Glantz Wolfson &
590 Madison Avenue                           Towbin LLC
New York, New York  10022                    321 North Clark Street, Suite 800
(212) 872-1000 (Telephone)                   Chicago, Illinois 60654
(212) 872-1002 (Telecopier)                  (312) 276-1333  direct phone
fhodara@akingump.com                         (312) 275-0569  direct facsimile
                                             stowbin@shawgussis.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney certifies that service of the above and attached pleadings was accomplished (i) by electronic notice to CM/ECF registrants and (ii) by First Class U.S. Mail, postage prepaid on this 4th day of September, 2008.

<i>/s/ Janice A. Alwin</i>

**CM/ECF Service List:**

- **Michael F. Braun**
  mbraun@srzlaw.com
- **James L. Komie**
  jkomie@srzlaw.com
- **John M. Newman , Jr**
  jmnewman@jonesday.com,
  nmadamczyk@jonesday.com
- **Mark P. Rotatori**
  mprotatori@jonesday.com,
  babutkus@jonesday.com

- **Lee Ann Russo**
  larusso@jonesday.com
- **Robert D Snow , Jr**
  rsnow@srzlaw.com
- **Steven Bennett Towbin**
  stowbin@shawgussis.com
- **Derek Leland Wright**
  dlwright@foley.com,khall@foley.com

**Mail Service List:**

**Michael F. Braun**
Schuyler, Roche & Zwirner
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**James L. Komie**
Schuyler, Roche & Zwirner
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**Robert D Snow, Jr**
Schuyler Roche and Zwirner
One Prudential Plaza
130 East Randolph Street
Suite 3800
Chicago, IL 60601

**Lee Ann Russo**
Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692

**Mark P. Rotatori**
Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692

**With a Courtesy Copy to:**

**Hon. Wayne R. Anderson**
**Chambers 1486**
**219 S Dearborn St**
**Chicago, IL 60604**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RPG INVESTMENT HOLDINGS, LLC,           )
a Delaware Limited Liability Company, RPG   )
HOLDINGS, INC., a Delaware Corporation and  )
RECYCLED PAPER GREETINGS, INC., an     )
Illinois Corporation                    )
                                        )
                Plaintiffs,             )
                                        )
v.                                      )
                                        )
AMERICAN GREETINGS CORP.,               )
An Ohio Corporation,                    )
                                        )
                Defendant.              )

Case No. 08 CV 4422
Judge Wayne R. Andersen
Magistrate Judge Maria Valdez

## AFFIDAVIT OF EDWARD H. BURDICK

Edward H. Burdick, being duly sworn, hereby deposes and says as follows:

1.  I am a partner in the Stamford, Connecticut offices of Camulos Capital LP ("Camulos"). Certain funds managed by Camulos are members of the Second Lien Group.[1] I am the senior person responsible for this investment at Camulos and, as such, am familiar with the facts set forth in this declaration.

2.  I submit this affidavit (the "Affidavit") in support of the Second Lien Group's response (the "Response") to plaintiffs' reply memorandum in support of their emergency motion for a temporary restraining order (the "Reply"), to address the incorrect "factual" assertions contained in the Amended Complaint, plaintiffs' Reply and the Supplemental Affidavit of Charles Yoon submitted in support thereof.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Second Lien Group's Response (as defined herein).

3.  Plaintiffs overstate the actual progress that was made in restructuring discussions before the Second Lien Group discovered that AG acquired first lien debt, and wrongly place blame on AG for the Companies' failure to achieve a consensual out-of-court restructuring.

4.  In or around April 2008, the Companies approached their lenders to discuss an out-of-court restructuring of their debt obligations under the First and Second Lien Credit Agreements. The premise of those discussions was RPG's business plan and financial forecasts.  The Second Lien Group actively participated in the review of RPG's business plan over the course of April through June, prior to the Second Lien Group's knowledge that AG had acquired a significant portion of the first lien debt.

5.  In approximately early July 2008, RPG revealed to its lenders that the financial forecasts contained in the April 2008 business plan were no longer accurate and needed to be substantially revised.

6.  When RPG subsequently presented its revised business plan to its lenders in approximately July 2008, its financial forecasts were materially lower than the April 2008 forecasts that had been the basis of negotiations.

7.  It was only after this July 2008 meeting that the Second Lien Group determined that AG held a position in the first lien debt.

8.  None of the restructuring proposals exchanged between the Companies and the Second Lien Group during this timeframe resulted in the parties being even close to achieving a consensual, out-of-court restructuring.  To the contrary, from the Second Lien Group's perspective, the parties remained far apart.

9.  Thus, the failure of these negotiations was unrelated to AG's acquisition of first lien debt.

10. Plaintiffs' allegation that AG's presence has scared away potential new equity investors is also not supported. The Second Lien Group itself has not ruled out such an investment, if necessary, under the appropriate circumstances.

11. If any party has taken steps that may irreparably harm the Companies' ability to consensually restructure their debt, that party is RPGI. By virtue of first the threat, and now the pursuit, of this litigation, critical negotiations between the Companies and their lenders have been hampered.

12. Given the Companies' current financial condition, any order enjoining AG from negotiating a restructuring with the Companies' second lien lenders, including the Second Lien Group, would present a real and immediate threat to the future of RPG's business, its employees and the ability of its lenders to collect on the debt they are owed. A consensual out-of-court restructuring will maximize recovery for all stakeholders and is the most desirable outcome. That outcome, however, cannot be achieved without all of the Companies' stakeholders being free to immediately engage in *direct* discussions with one another.

I, Edward H. Burdick, am over the age of eighteen, make this Affidavit on personal knowledge and under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, and certify that the foregoing is true and correct.

Executed on September 4, 2008.

_____

Edward H. Burdick